## BLODGETT v. CODY et al.
### No. 9100.

Circuit Court of Appeals, Sixth Circuit.
Oct. 23, 1942.

Robert C. C. Heaney, of Grand Rapids, Mich. (McCobb & Heaney, of Grand Rapids, Mich., on the brief), for appellant.

Laurent K. Varnum, of Grand Rapids, Mich. (Travis, Merrick, Varnum & Riddering, of Grand Rapids, Mich., on the brief), for appellees Lewis P. Cody and Globe Indemnity Co.

Paul Cholette, of Grand Rapids, Mich. (Alexander, McCaslin & Cholette, of Grand Rapids, Mich., on the brief), for appellee Central Surety & Insurance Corporation.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Walter H. Blodgett appeals from the determination of the district court, dismissing his bill to set aside an order of the probate court of Kent County, Michigan, which confirmed appellee Cody's final report and account in a guardianship matter. Other appellees are the guardian's sureties.

Appellant, the grandson of the ward, is her residuary legatee. He had been previously granted, by the state circuit court, a delayed appeal from probate court for review of appellee guardian's account. The circuit court surcharged the guardian's account on the ground that he had substituted his own securities for funds of the ward, without authorization, and had mingled his personal funds with the estate. The guardian thereafter appealed to the Supreme Court of Michigan, In re Cody's Estate, 293 Mich. 697, 292 N.W. 535, 536, which reversed the circuit court on the ground that appellant, not being next of kin of the deceased ward, was not entitled to appeal from the order of the probate court because of the provisions of a statute limiting such appeals to husband, wife, or next of kin. The Supreme Court, in its opinion, stated that if appellant found himself without remedy on the law side of the court, "it may necessitate resort to proceedings in equity *where a moving party may be required to do equity.*"

In 1926, appellee was appointed guardian of his wife, who was adjudged mentally incompetent, and acted in this capacity for eleven and a half years, until her death in 1937. For the first two and a half years of this period, she was confined to the state asylum. During this time, appellee kept her apartment and furnishings exactly as they were previous to the probate proceedings. He then brought her home and, during the remainder of her life—a period of more than nine years—he gave her the best of care and treated her with the utmost consideration.

When appellee was first appointed guardian, he filed an inventory of his wife's estate, which showed a value of assets amounting to $6,454.77. Of this amount, he had previously given her securities valued at $2,000.00. During the period of the

guardianship, appellee owed considerable indebtedness, and in 1934 his obligations amounted to more than $45,000.00. Appellee filed seven accounts in probate court. The first was admittedly regular and was allowed after due publication. The only other accounts published and allowed were the sixth account and the final account. In the first six accounts, comprising the period up to July 1, 1937, appellee expressly stated that he was not making any charge for services or moneys paid out for the benefit of his wife, and that they were being donated by him. In the final account, he was allowed $125.00 per month, for five months, or a total of $625.00, for the living expenses of his ward for this period.

Complaint is made of the manner in which the funds of the estate were used by appellee during the guardianship. It appears that whenever expenditures for his wife's support were necessary, appellee used his own funds, whenever he had them. When he was without funds for her support, he used cash from the estate, depositing certain of his own securities to balance the withdrawals. On several occasions, the securities so deposited in the estate, were not proper for investment by a guardian; and, thereafter, such securities were found to be greatly depreciated in value. Appellee also mingled cash of the estate in his own bank account. The final result of eleven and one-half years of guardianship was that at the time of appellee's final account, he had on hand approximately $1,800.00, which, with allowances for expenditures, left less than $1,000.00 to be distributed.

Upon examination of the record, we have come to the conclusion that appellant has not proved any dishonesty or bad faith on the part of appellee. While the guardian did not comply with the law in regard to his use of the estate funds, the substitution of securities for cash, and the mingling of personal funds with those of the estate, nevertheless, it appears from our review of the evidence, that the diminution of estate funds was due to expenditures on behalf of the ward. In spite of the fact that the guardian, in all reports except his final account, stated that he was making no charge for services and expenses, such items are bound to be considered in equity in a proceeding against him for fraud and misappropriation. It is reasonable to conclude that, in using the estate funds for the benefit of the ward, appellee considered that the substitution of his own securities for such funds was a proper way of maintaining the assets of the estate. It would appear that if he had used the funds for the care and maintenance of his ward, without depositing his own securities whenever he withdrew funds for this purpose, the assets of the estate would have been exhausted long before the death of the ward. He knew that in the event of his death, his obligations would wipe out whatever few assets he might have.

In his final account, when he made application for allowances for his wife's support, appellee was granted $125.00 a month. If he had applied for such allowances during the entire period of her incapacity, and had been allowed even half that amount, such allowances would have exceeded the entire value of the estate of the ward; and we make this observation, having in mind that the proof is not clear, as to when appellee's financial condition was such that he would have been entitled to these allowances. The deposit of his securities in the estate, by the appellee, was in the nature of a donation; and appellee's testimony that he had made such deposits in the estate when he needed funds for his ward's support, in order that there might be assets remaining in the ward's estate for her support, in case of his death, is plausible. In all of the guardian's conduct, there is apparent the devotion and solicitude of a loving husband, under the most distressing and difficult circumstances, while overwhelmed in his old age, by debt and misfortune.

It is unnecessary to discuss all of the claims made with regard to banking accounts and real estate transactions. Our disposition of the appeal applies to all such controverted matters. The district court held that the order of the probate court, confirming the guardian's final account, was res adjudicata, and that appellant had not proved such fraud as would entitle him to have the confirmation set aside.

From the foregoing, it is our conclusion that appellant failed to prove any actual or intentional fraud, or that the guardian depleted the estate funds to his own advantage. In default of such proof, the trial court properly declined to set aside the final order of the probate court. The order of the district court is affirmed.